IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE:<br>RADLAX GATEWAY HOTEL, LLC, *et al*.<br><br>Debtors.<br>-------------------------------------------------------<br>LAX ENTERPRISE, L.P.,<br><br>Appellant,<br><br>vs.<br><br>RADLAX GATEWAY HOTEL, LLC, *et al*.<br><br>Appellees. | Case No. 11 C 3336 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

LAX Enterprise, L.P., appeals from a bankruptcy court order denying its administrative claim against the Chapter 11 bankruptcy estate of debtors RadLAX Gateway Hotel, LLC and RadLAX Gateway Deck, LLC. LAX Enterprise seeks compensation for alleged losses sustained due to the debtors' occupation of an area over which LAX Enterprise claims it has an exclusive easement. For the reasons set forth below, the Court affirms in part and remands in part for further proceedings.

### Background

The Court takes the following facts from the parties' submissions in this appeal and before the bankruptcy court.

This dispute concerns a one-block parcel of land adjacent to Los Angeles International Airport. The land is divided into three sections, referred to by the parties as the office property, the hotel property, and the parking property. The names reflect the structures the properties contain. LAX Enterprise owns the office property and the office building thereon; Gateway Hotel owns the hotel property; and Gateway Deck owns the parking property. The office property benefits from an easement that gives LAX Enterprise the right to park vehicles on a portion of the parking property (the "parking easement area"). When Gateway Deck acquired the parking property, it contained a parking deck in which most of the spots in the parking easement area were located.

The parking easement area was originally established in 1963 through an agreement between Kratter Corp., which owned all three properties, and Airportel, Inc., which leased the parking and hotel properties. When Kratter constructed the office building, the two companies entered into an agreement referred to by the parties as the "1963 lease and easement." This document stated that "an area on the surface of the Parking Area [would] be set aside for exclusive motor vehicle parking facilities for the benefit of the Office Building Property." Appellant's Ex. 34 at LAX 00165. It stated further that Kratter and its successors or assigns would "possess and reserve the right . . . in the nature of an easement for the benefit of, and appurtenant to, the Office Building Property, to the exclusive use and possession of all parking spaces solely for parking and parking access purposes . . . that are contained within the Office Building Easement Area." *Id*. at LAX 00166. The document also contains other provisions that the Court will discuss below. The parties agree that LAX Enterprise has succeeded to

2

Kratter's rights in the parking easement area.

In May 2008, Gateway Hotel and LAX Enterprise entered into an agreement under which Gateway Hotel leased the parking easement area from LAX Enterprise for $40,000 per month. In August 2008, Gateway Deck (with the assistance of Gateway Hotel) demolished the original parking deck and began to build a new one. Construction on the new parking deck stalled in April 2009, however, and it has never been completed. The lease expired on May 31, 2009. The debtors filed a Chapter 11 bankruptcy petition on August 17, 2009.

LAX Enterprise asserted an administrative expense claim for compensation for the debtors' alleged use and occupancy of the parking easement area following the expiration of the lease. It sought redress in the bankruptcy court under several theories.

First, LAX Enterprise asserted that the debtors are trespassing on the parking easement area and that it is entitled to compensation for this. LAX Enterprise claimed that it lost the ability to rent the parking easement area to another party and that a sales contract for the office building fell through because of the unavailability of the parking easement area.

Second, LAX Enterprise asserted that it was entitled to $40,000 per month from the bankruptcy petition date forward as an administrative expense under 11 U.S.C. § 503(b)(1)(A). To establish this claim, it needed to show that the claim arose out of a transaction with the debtor-in-possession and benefitted the operation of the debtors' business. *In re Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir. 1984). LAX Enterprise argued that the debtors' use and occupancy of the parking easement area constituted a

transaction that benefitted the estates because the uncompleted parking deck is Gateway Deck's only asset.

Third, LAX Enterprise contended that it was entitled to "adequate protection" for the loss in value of its interest in the easement under 11 U.S.C. § 363(e).

After a trial, LAX Enterprise moved for additional discovery, alleging that it had discovered that Gateway Hotel was using the parking easement area for hotel guest parking. The bankruptcy court continued the motion for discovery until after issuing its ruling.

The court then ruled for the debtors. It held first that LAX Enterprise had failed to show that a trespass had occurred under California law because "an owner of real property may be liable for trespass over his own land [only] if he has transferred exclusive possession to another," and the parking easement did not give LAX Enterprise an exclusive possessory interest. *In re RadLAX Gateway Hotel, LLC*, 447 B.R. 570, 576-77 (N.D. Ill. 2011) (citation omitted).

The bankruptcy court then found that if there had been a trespass, it "likely would be considered a transaction between [LAX] Enterprise and the Debtor." *Id*. at 577. The fact that Gateway Deck does not operate a business on the parking property, however, meant that "any trespass would not stem from an attempt to preserve a going concern or any other type of value for the estate." *Id*. It found further that any current parking by the hotel would "not link the alleged trespass to the ongoing operations of the hotel" because the alleged tort is simply the trespass on the parking easement area, which would occur regardless of hotel operations. Therefore, any trespass "would not be a necessary cost of preserving any of the estates, would not benefit any of the estates,

4

and does not qualify as an administrative expense against any of the estates." *Id*. at 578.

After the bankruptcy court issued its order, LAX Enterprise moved to amend, requesting a judgment in its favor on its claim for "adequate protection" of its ownership interest, which the court's initial order had not addressed. The court amended its order to include a denial of this claim on the ground there was "no evidence to show that [LAX] Enterprise's interest has decreased in value in any way due to the pendency of this bankruptcy." Bankr. Ct. Order of March 30, 2011.

LAX Enterprise now appeals the denial of its claim. First, it argues that the bankruptcy court erred in finding that the parking easement is not exclusive. Second, LAX Enterprise argues that the court improperly conflated its second argument with its trespass theory. It contends that it is entitled to an administrative expense claim regardless of whether a trespass occurred. Third, it argues that the court similarly erred in conflating its argument regarding current parking of hotel-related vehicles with its trespass theory. Fourth, it argues that the court misstated the legal standard for a claim for adequate protection.

## Discussion

The Court has jurisdiction under 28 U.S.C. § 158(a). It reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *Ojeda v. Goldberg*, 599 F.3d 712, 716 (7th Cir. 2010).

**A.    Trespass**

LAX Enterprise challenges the bankruptcy court's determination that the

easement documents did not create an exclusive easement.  Because this issue requires the Court to construe the terms of a written contract, the Court reviews the matter *de novo*.  See *GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 621 (7th Cir. 1995).

The parties disagree regarding which documents control the scope of the easement.  They agree, as does the Court, that the 1963 lease and easement is functionally identical to a "parking agreement" entered in 1964 between Kratter and a subsequent lessee.  The debtors also argue, however, that the document referred to by the parties as the "city easement" supplies governing terms.  LAX Enterprise disagrees.  As the Court explains below, it finds LAX Enterprise's arguments regarding trespass unavailing even without considering the city easement.  It therefore confines its inquiry to the terms of the 1963 lease and easement.

The bankruptcy court found, and LAX Enterprise does not dispute, that the debtors cannot be liable for trespass if the parking easement is not "exclusive" under California law.  An exclusive easement is "an unusual interest in land; it has been said to amount almost to a conveyance of the fee.  No intention to convey such a complete interest can be imputed to the owner of the servient tenement in the absence of a clear indication of such an intention." *City of Pasadena v. California-Michigan Land & Water Co.*, 17 Cal.2d 576, 578-79, 110 P.2d 983, 983 (1941).

Since *City of Pasadena*, California's intermediate appellate courts have elaborated on the requirements for the creation of an exclusive easement.  In *Gray v. McCormick*, 167 Cal. App. 4th 1019, 1025, 84 Cal. Rptr. 3d 777, 782 (2008), the court

noted that "in stating that the owner of the servient tenement retained limited rights to use the easement area, the court in [*City of*] *Pasadena* was construing a grant of a nonexclusive easement." By contrast, the grant creating the easement at issue in *Gray* expressly defined it as an "exclusive easement of access, ingress and egress" and noted that use of the easement area by the beneficiaries "shall be exclusive." *Id*., 167 Cal. App. 4th at 1026, 84 Cal. Rptr. 3d at 782 (internal quotation marks omitted). The easement also required the beneficiaries to take on all obligations and costs of improvement and maintenance.

The court in *Gray* compared the easement at issue with those analyzed in two additional cases. In *Blackmore v. Powell*, 150 Cal. App. 4th 1593, 59 Cal. Rptr. 3d 527 (2007), the court interpreted an easement for "parking and garage purposes" as exclusive despite the absence of "explicit . . . language" because "it made no sense to construe a garage as being for anything other than exclusive use." *Gray*, 167 Cal. App. 4th at 1029, 84 Cal. Rptr. 3d at 785-86 (internal quotation marks and citation omitted). By contrast, in *City of Los Angeles v. Igna*, 208 Cal. App. 2d 338, 25 Cal. Rptr. 247 (1962), the court found that an easement that the governing deed specifically designated as exclusive nonetheless "did not meet the exclusivity test of [*City of*] *Pasadena*" because it "specifically reserved extensive rights in the owner of the servient tenement." *Gray*, 167 Cal. App. 4th at 1029-30, 84 Cal. Rptr. 3d at 785-86.

Unlike the easement at issue in *City of Pasadena*, the 1963 lease and easement contains specific references to exclusivity. The Court agrees with the bankruptcy court, however, that, as in *Igna*, the rights reserved in favor of the servient tenement owner

7

render LAX Enterprise's parking easement nonexclusive. Although the 1963 lease and easement purports to grant the right to "exclusive use and possession" of a number of parking spaces "solely for parking and parking access purposes," Appellants' Ex. 34 at LAX 00166, it also notes that LAX Enterprise's rights of way through the easement area are "nonexclusive." *Id*. at LAX 00167. Rather than expressly reserving access to the entire easement area to LAX Enterprise, it states that "any rights [servient tenement owner] has to possess, control or use the surface of the . . . Easement Area . . . shall be subject and subordinate to the right[s]" of LAX Enterprise. *Id*. at LAX 00166. Unlike the easement in *Gray*, this is not language that "clearly expresses the intention that the use of the easement area shall be exclusive to the owners of [the office property], in the sense of excluding all others." *See Gray*, 167 Cal. App. 4th at 1025, 84 Cal. Rptr. 3d at 782.

Moreover, unlike the easement in *Gray*, which made the dominant tenement owner responsible for all repairs, the 1963 lease and easement contains extensive reservations in favor of the servient tenement owner. The debtors are entitled under the lease and easement to enter the parking easement area to make repairs and inspections, to permanently grade its surface, and to "lay, or cause to be laid, gas, water, electric, steam, sewer and other public utility pipes, mains, and conduits on, under, through and across the [parking] Easement Area." *Id*. at LAX 00171. As the bankruptcy court noted, the document also allows the debtors to "permanently obstruct some of the easement area as long as a suitable replacement [is] found." *RadLAX*, 447 B.R. at 576.

8

Thus, as the bankruptcy court found, the 1963 lease and easement "set out an area of parking stalls that the Office Property was allowed to use to park vehicles for its benefit, but the owner of the Parking Property retained the right to enter onto the easement area." *Id*. In addition to this right of entry, the debtors retain the right to change which parking stalls were designated for the office property, to make repairs and improvements, and to install permanent fixtures such as wiring and pipes in the easement area. These rights contrast directly with the exclusive use and access granted in the easements at issue in *Gray* and *Blackmore*. They clearly indicate that LAX Enterprise's right to park vehicles, exclusive though that aspect of the easement may be, does not "amount almost to a conveyance of the fee" for the parking easement area. *Cf. City of Pasadena*, 17 Cal. 2d at 578, 110 P.2d at 983.

For these reasons, the Court concludes that the bankruptcy court ruled correctly that the easement is non-exclusive and that LAX Enterprise is not entitled to relief under a theory of trespass.

## B.  Non-trespass-based administrative claim

LAX Enterprise correctly points out that the remainder of the bankruptcy court's decision focused on whether LAX Enterprise would be entitled to an administrative claim even if it had proved that there was a trespass. It argues that it is possible to consider its administrative claim under the *Jartran* standard regardless of whether a trespass had occurred – a proposition that the bankruptcy court did not address in its decision.

To succeed on its administrative claim, LAX Enterprise must show that its

9

expense arose out of a transaction with the debtor-in-possession and that the transaction benefitted the operation of the debtors' business. *Jartran*, 732 F.2d at 587. The parties do not appear to disagree on the relevant facts: the debtors' uncompleted parking deck has continued to occupy the parking easement area since the expiration of the lease and has prevented LAX Enterprise from using the area. The parties disagree on whether this constitutes a transaction and whether it benefitted the debtors' business.

LAX Enterprise likely has shown that a transaction occurred, because its claim "represents use and occupancy of the Property, in the form of estate asset storage [and therefore] arises from a postpetition transaction with the estate." *See In re PYXSYS Corp.*, 288 B.R. 309, 317 (Bankr. D. Mass. 2003). Furthermore, LAX Enterprise may well be able to establish that the debtors' continued use and occupancy of the parking easement area benefits the debtors' estates. *See id*. (collecting cases). As LAX Enterprise argues in its brief, the unfinished parking deck represents Gateway Deck's only asset and the only avenue through which it might achieve profitability. The deck occupies the parking easement area and prevents LAX Enterprise from making use of it – occupancy that originally began in exchange for money under the terms of a lease and that continues for free. And the entire purpose of the occupancy – facilitating the reconstruction project – was to benefit the debtors.

Because the bankruptcy court has not yet addressed this argument, however, the Court remands the case for further consideration of whether LAX Enterprise is entitled to an administrative expense even in the absence of a finding of trespass.

In addition, the debtors' alleged use of the parking easement area for parking by

hotel guests, if that has occurred, likewise could be considered to be a benefit to the debtors' estate.  Although the bankruptcy court did not consider this issue because it concluded that it would not be relevant to the degree of trespass, use of the parking easement area by hotel guests likely would be relevant on the question of benefit to the debtors under the *Jartran* standard.  On remand, the bankruptcy court is directed to consider LAX Enterprise's motion for additional discovery regarding this issue.  If it concludes that additional discovery is appropriate, the court should consider any subsequently provided evidence in its analysis of LAX Enterprise's administrative claim.

**C.      Adequate protection**

LAX Enterprise argues that it is entitled to relief under 11 U.S.C. § 363(e), which states that

> at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

The bankruptcy court ruled for the debtors on this claim because it found "no evidence to show that [LAX] Enterprise's interest has decreased in value in any way due to the pendency of this bankruptcy."  Bankr. Ct. Order of March 30, 2011.  LAX Enterprise argues that this misstates the standard.  It argues that a statutory claim for adequate protection depends not on the effect of the bankruptcy itself on the claimant's interest, but rather the effect that a debtor's underlying action has on the claimant's interest.  The Court agrees.

Under 11 U.S.C. § 361, adequate protection under section 363 may be granted in the form of monetary compensation "to the extent that [a debtor's] use [of property]

11

results in a decrease in the value of [a petitioning] entity's interest in such property." Under the plain meaning of these words, LAX Enterprise has made allegations that, if true, could show that the value of its interest in the parking easement has decreased due to the debtors' continued use and occupancy of the easement area. As LAX Enterprise points out, it has provided evidence that the failure of a prospective sale of the office building was influenced at least in part by the unavailability of the parking easement area. Although the parties dispute the credibility of the testimony and other evidence they have each provided on this issue, it is not necessary for the Court to resolve these disputes. Rather, the Court directs the bankruptcy court to consider this evidence on remand with respect to LAX Enterprise's claim for adequate protection.

**Conclusion**

For the foregoing reasons, the Court reverses the bankruptcy court's decision in part and remands the case for further proceedings consistent with this decision.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 26, 2012